IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIC ERICSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 1434 |
| v. ) | |
| ) | Hon. Virginia M. Kendall |
| BRIAN STOLFE and CITY OF GENEVA, ) | |
| ILLINOIS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

After passing a school bus on a two-lane road, *pro se* Plaintiff Eric Ericson was pulled over by Officer Brian Stolfe. Officer Stolfe ultimately issued Ericson a warning for improper passing. Afterwards, Ericson brought this action against Officer Stolfe and the City of Geneva pursuant to 42 U.S.C. § 1983 alleging Fourth Amendment violations for false arrest and unreasonable search. This matter is currently before the Court on Defendants' Motion for Summary Judgment. (Dkt. 21). For the reasons set forth below, Defendants' motion is granted.

## BACKGROUND

The Court takes the relevant facts from the parties' Local Rule 56.1 statements of undisputed material facts and supporting exhibits: (1) Defendants' Rule 56.1 Statement of Material Facts (Dkt. 23); Ericson's Response to Rule 56.1 Statement of Material Facts, which includes his Additional Statement of Material Facts (Dkt. 28); and Defendants' Response to Ericson's Rule 56.1 Statement of Additional Facts (Dkt. 30). The Court views the record in the light most favorable to the nonmoving party—here, Ericson—and construes all facts in his favor. *Ellis v. DHL Express, Inc.*, 633 F.3d 522, 525 (7th Cir. 2011). Before discussing those facts, the Court turns to the requirements of Local Rule 56.1.

1

## A. Local Rule 56.1

In the Northern District of Illinois, a party moving for summary judgment must file along with its motion a Local Rule 56.1(a) statement of undisputed facts, consisting of short numbered paragraphs and citations to affidavits or other parts of the record relied on to support the facts set forth in each paragraph. N.D. Ill. L.R. 56.1(a); *see also Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000). The response of the party opposing the motion must contain "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon" and a statement of "any additional facts that require the denial of summary judgment." N.D. Ill. L.R. 56.1(b)(3)(B) & (C). This Court may rigorously enforce compliance with Local Rule 56.1. *See Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011). Further, Ericson's status as a *pro se* litigant does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Atkinson v. SG Americas Sec., LLC*, 693 F. App'x 436 (7th Cir. 2017) (district courts may reasonably enforce compliance with its local rules, even for a *pro se* litigant); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of *pro se* litigants, they may nonetheless require strict compliance with local rules.").

In this case, Ericson asserts that he has "no knowledge of" certain of Defendants' statements of material fact. *See, e.g.*, (Dkt. 28) at ¶¶ 5, 9. But "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." N.D. Ill. L.R. 56.1(b)(3)(C). Although the Court draws all inferences in Ericson's favor, an adequate rebuttal of a supported assertion of fact requires a

citation to specific support in the record; Ericson's "no knowledge" response is inappropriate as it neither admits nor denies Defendants' facts and is unsupported by citations to the record. *See e.g. Ace Hardware Corp. v. Landen Hardware, LLC*, 883 F. Supp. 2d 739, 742–43 (N.D. Ill. 2012). One consequence of Ericson's failure to comply with Local Rule 56.1 is that the Defendants' factual allegations to which the inadequate responses are directed are deemed admitted to the extent that they are supported by the record. *Id.*; *See e.g. De v. City of Chicago*, 912 F. Supp. 2d 709, 712–13 (N.D. Ill. 2012) (citing L.R. 56.1(b)(3)(C)); *Deacon v. Peninsula Chi., LLC*, 2017 WL 3531518, at *1 (N.D. Ill. Aug. 17, 2017). Accordingly, the Court disregards Ericson's responses to paragraphs 5 and 9 contained in Defendants' Statement of Material Facts.

Further, paragraphs 26 and 27 included in Ericson's Additional Statement of Material Facts are problematic. *See* (Dkt. 28) at ¶¶ 26, 27. These paragraphs are based solely on Ericson's "Second Request for Admissions." *See id.* at 20–21. Although the Certificate of Service on the document indicates that Ericson mailed these requests to counsel for Defendants on May 10, 2017, Defendants assert that they were never received. Normally, for a failure to respond to a request to admit within 30 days of service, the facts are deemed admitted. Fed. R. Civ. P. 36(a)(3). Here, however, there is a dispute as to whether the requests were ever served and the parties failed to communicate about these requests during discovery. Because of this dispute, the Court will not strike these facts, particularly not paragraph 27, which Defendants have already admitted. *See* (Dkt. 30) at ¶ 27. Nevertheless, the Court will treat paragraph 26 as disputed.

**B.    Facts**

On December 9, 2016, at sometime between 2:30 and 2:44 p.m., Officer Stolfe, a police officer for the City of Geneva, was on duty and driving northbound in his squad car on Anderson Boulevard near the intersection of Anderson Boulevard and State Street. Ericson was driving

southbound on the same road behind a school bus. (Dkt. 23) at ¶¶ 2, 4, 5. Anderson Boulevard has two lanes of traffic—a northbound lane and a southbound lane—and room for street parking on both sides. (Dkt. 28) at ¶ 25. The bus stopped around 630 Anderson Boulevard with its "stop arm" raised and with red lights flashing to discharge students; Ericson stopped behind the bus. (Dkt. 23) at ¶ 6; (Dkt. 28) (Pl.'s Additional Facts) at ¶¶ 17–18. After the bus lowered the stop arm and stopped flashing its lights, Ericson—still traveling southbound—passed the bus on the left by crossing over the yellow center line and entering or "clearing" the northbound lane of oncoming traffic to get around the bus. (Dkt. 28) at ¶ 18; (Dkt. 23) at ¶ 7. While momentarily in the northbound lane, Ericson saw oncoming traffic in front of him, which the parties agree was more than 200 feet away. (Dkt. 23) at ¶ 8; (Dkt. 28) at ¶ 19. Still, Officer Stolfe observed Ericson's car "fully enter" the northbound lane, and he attests that he had to slow his vehicle to avoid colliding with Ericson's vehicle. (Dkt. 23) at ¶ 9; (Dkt. 23-1) (B. Stolfe Aff.) at ¶¶ 4. After Ericson finished passing the bus and drove past Officer Stolfe, Officer Stolfe made a U-turn, turned on his lights, and made a traffic stop. *Id.* at ¶¶ 10, 11.

Officer Stolfe initially told Ericson, "Do you know you passed through a school zone?" (Dkt. 28) at ¶ 20. Officer Stolfe asked for Ericson's driver's license and insurance verification and Ericson provided both. (Dkt. 23) at ¶ 12. Officer Stolfe did not pat down Erickson, ask him to open his trunk, or ask him top open any of the doors of his car. *Id.* at ¶¶ 14–15; *see also* (Dkt. 30-1) (12/9/16 Warning Notice No. G158251 ("Warning")) (noting that no consent search was requested and no search was conducted). After somewhere between 15 to 25 minutes, Officer Stolfe issued Ericson "Warning Notice No. G158251" for a "Lane Violation," or specifically "improper passing" pursuant to "Section No. 11-702," presumably 625 ILCS 5/11-702. (Dkt. 23) at ¶¶ 11, 13, 16; *see also* (Dkt. 30-1) (Warning) (noting that the stop was conducted at 2:44 p.m.

4

and lasted seven minutes). The parties dispute whether Officer Stolfe knew "what 625 ILCS 5/11-702 referred to." (Dkt. 28) at ¶ 26; (Dkt. 30) at ¶ 26. The next day, Ericson requested an explanation for the traffic stop from Jeff Wolf, Officer Stolfe's supervisor, but Defendants did not respond to Ericson's request. (Dkt. 28) at ¶¶ 24, 27.

On February 24, 2017, Ericson filed a four-count Complaint asserting the following claims: a § 1983 claim for false arrest in violation of his Fourth Amendment rights (Count I); a § 1983 claim for unreasonable search in violation of his Fourth Amendment rights (Count II); a claim for *respondeat superior* against Geneva for Officer Stolfe's torts (Count III); and a claim for indemnification under 745 ILCS 10//9-102 against Geneva for any judgments against Officer Stolfe (Count IV). Ericson seeks compensatory and punitive damages. (Dkt. 1). Defendants now move for summary judgment. (Dkt. 21).

## STANDARD OF REVIEW

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although a bare contention that a factual dispute exists is insufficient to defeat a motion for summary judgment, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000) (citing *Anderson*, 477 U.S. at 247), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor (here, Ericson). *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). Still, Ericson is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only

5

speculation or conjecture.'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation and quotation marks omitted).

Defendants are entitled to summary judgment if Ericson "cannot present sufficient evidence to create a dispute of material fact regarding any essential element of [his] legal claims on which [he] bears the burden of proof." *Burton v. Bd. of Regents of the Univ. of Wis. Sys.*, 851 F.3d 690, 694 (7th Cir. 2017). To avoid summary judgment, the nonmoving party must go beyond the allegations of his complaint and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (internal quotation marks and citation omitted); *accord Hannemann v. Southern Door County Sch. Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). For this reason, summary judgment is the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *See Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007). In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). It is not the role of the Court to scour the record in search of evidence to defeat a motion for summary judgment; instead, the nonmoving party bears the responsibility of identifying evidence to defeat summary judgment. *See Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson*, 477 U.S. at 252.

## **DISCUSSION**

Defendants move for summary judgment on all four counts. They argue that Counts I and II fail because oh Officer Stolfe lawfully detained Ericson or, alternatively, that Officer Stolfe is

6

entitled to qualified immunity for his actions; Count III fails because Geneva cannot be liable under a theory of *respondeat superior*; and Count IV fails because, as a claim for indemnification, it is derivative of Ericson's other failed claims. *See* (Dkt. 22).

A.  **False Arrest (Count I)**

The Fourth Amendment prohibits unreasonable searches and seizures. "'False arrest' is shorthand for an unreasonable seizure prohibited by the Fourth Amendment." *Gonzalez v. Vill. of W. Milwaukee*, 671 F.3d 649, 655 (7th Cir. 2012) (citation omitted). Ericson contends that Officer Stolfe violated the Fourth Amendment's prohibition on unreasonable seizure when he "detained [Ericson] against his will without a warrant and without probable cause to believe that [Ericson] had committed, was committing or was about to commit an offense." (Dkt. 1) at ¶ 20.

1.  **Reasonable Suspicion to Stop Ericson**

"An officer's temporary detention of an individual during a traffic stop constitutes a seizure of a person . . . and thus must be reasonable under the circumstances." *Huff v. Reichert*, 744 F.3d 999, 1004 (7th Cir. 2014); *see also Whren v. United States*, 517 U.S. 806, 809–10 (1996) ("Temporary detention of individuals during the stop of an automobile by the police, even if for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of the [Fourth Amendment]."). Not all traffic stops are analyzed in the same manner; some stops are based on reasonable suspicion and others are based on probable cause. *See United States v. Bentley*, 795 F.3d 630, 633 (7th Cir. 2015). "The latter are not subject to the scope and duration restrictions of *Terry v. Ohio*, 392 U.S. 1 [] (1968)." *Id.* (citation omitted). Although Ericson argues here that the traffic stop was not justified by probable cause, he does not challenge the duration of the stop.[1] So as a result, the Court considers only whether, under the totality of the circumstances,

---

[1] Even if he had asserted such a challenge, it would fail based on the record before the Court. "A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 135 S.

7

an officer would have had reasonable suspicion that Ericson had committed a lane violation. *Id.*; *United States v. Riley*, 493 F.3d 803, 808 (7th Cir. 2007) (assessment of whether reasonable suspicion exists is an objective inquiry requiring consideration of "the totality of the circumstances known to the officer at the time of the stop, including the experience of the officer and the behavior and characteristics of the suspect"); *Huff*, 744 F.3d at 1004. "Reasonable suspicion amounts to something less than probable cause but more than a hunch." *United States v. Baskin*, 401 F.3d 788, 791 (7th Cir. 2005). "Ultimately, determining whether reasonable suspicion exists is not an exact science, and must be based on commonsense judgments and inferences about human behavior." *Matz v. Klotka*, 769 F.3d 517, 522 (7th Cir. 2014) (citation and quotation omitted). Further, "improper lane usage is a legitimate reason for an investigatory stop." *United States v. Hernandez-Rivas*, 513 F.3d 753, 759 (7th Cir. 2008)

Although Ericson disputes that Officer Stolfe knew what 625 ILCS 5/11-702 "referred to," the Warning Notice is clear that Officer Stolfe pulled Ericson over for "improper passing" in violation of that statute. The statute provides that "[d]rivers of vehicles proceeding in opposite directions shall pass each other to the right, and upon roadways having width for not more than one line of traffic in each direction each driver shall give to the other at least one-half of the main-

---

Ct. 1609, 1614 (2015). The tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission"—to address the traffic violation that warranted the stop. *Id.* (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). That is, a traffic stop should "last no longer than is necessary to effectuate the purpose of the stop," unless something occurs to give the officer reasonable suspicion to prolong the stop. *Valance v. Wisel*, 110 F.3d 1269, 1276 (7th Cir. 1997). The record here reflects that the traffic stop lasted somewhere between 15 and 25 minutes: Officer Stolfe first requested Ericson's driver's license and a proof of insurance and after conducting this limited investigation, Officer Stolfe handed Ericson a written warning and sent him on his way. (Dkt. 23) at ¶¶ 11–13, 16. Therefore, no reasonable jury could find that Officer Stolfe's detention of Ericson violated his Fourth Amendment rights because it ended when all of the steps attendant to investigating the lane violation were complete. *See Huff*, 744 F.3d at 1006 (noting that the portion of the police officer's stop in which he requested Huff's license, registration, and insurance, and ensured that there were no outstanding warrants for either plaintiff was consistent with the officer's testimony as to why he pulled over the plaintiffs and therefore constituted the limited investigation into the traffic violation that ended when he handed Huff the written warning).

8

traveled portion of the roadway as nearly as possible." 625 ILCS 5/11-702. In simple terms, the statute requires that a motorist give at least half of the roadway to vehicles passing in the opposite direction. *See, e.g.*, *Drake v. Harrison*, 151 Ill. App. 3d 1082, 1090 (5th Dist. 1987). Thus, the statute is intended to prevent head-on collisions and, although it is more frequently invoked in wrongful death and other negligence actions, a violation of the statute is a petty offense under Illinois law. *See* 625 ILCS 5/16-104. Ericson argues that Officer Stolfe lacked reasonable suspicion to believe that he violated Section 11-702 for two reasons.

First, Ericson argues that he was "obeying all traffic laws." (Dkt. 27) at 1–2; *see also id.* at 2 (describing his passing activity as "legal[] and lawful[]"). He appears to base this argument on his view that Section 11-702 was inapplicable to his passing conduct on Anderson Boulevard. This argument has two parts: Ericson first argues that the statute did not apply to his actions because it governs "[p]assing vehicles proceeding in opposite directions," *see* 625 ILCS 5/11-702, and he argues that he was passing a vehicle proceeding in the same direction. (Dkt. 27) at 2. Next, Ericson disputes the statute's applicability to Anderson Boulevard because it has wide driving lanes and space for street parking on both sides of the street, and therefore cannot be considered to be a roadway with "width for not more than one line of traffic in each direction." *See* (Dkt. 28) at ¶ 25.

Ericson's first argument is quickly disposed of, because the improper passing statute does not describe the proper passing of vehicles traveling in the same direction; it governs vehicles passing in opposite directions. In other words, regardless of the legality of Ericson's actions in relation to the bus, by fully entering the lane of oncoming traffic—which Ericson admits he did ((Dkt. 28) at ¶¶ 7, 8)—he failed to give the northbound traveling vehicles, including that of Officer Stolfe, the one-half of the roadway as nearly as possible that Section 11-702 requires.

9

Ericson's second argument—that Section 11-702 has no application to Anderson Boulevard—is misplaced. For purposes of the reasonable-suspicion analysis, the propriety of the traffic stop does not depend on whether Ericson was actually guilty of committing a traffic offense by failing to give oncoming traffic one-half of the roadway on a two-lane road. The pertinent question instead is whether it was reasonable for Officer Stolfe to *believe* that Ericson's passing was impermissible under the improper passing statute. *See United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) ("[W]e need only inquire whether the officer had probable cause to believe that a traffic violation occurred, not whether [the driver] actually was tailgating") (internal citation omitted).

The parties do not dispute that, regardless of any space for parked cars, Anderson Boulevard only has one lane of traffic traveling in each direction. *See* (Dkt. 28) at ¶ 25; *see also* (Dkt. 23-3) at 18:11–15 (E. Ericson Dep.) ("Q. Okay. Then can you describe to me Anderson Boulevard? A. Well, it is an arterial road in Geneva. It is four lanes wide, *two lanes for driving*, two lanes for parking.") (emphasis added); *see also* (Dkt. 28) at 10 (4/17/17 Resp. of Defs. to Pl.'s Request for Admissions) ("Anderson Boulevard is a north-south street and has *one wide driving lane in each direction* and one parking lane in each direction for its entire length and is an arterial street. RESPONSE: Defendant admits that Anderson Boulevard is a north-south street and has *one wide driving lane in each direction*, and is an arterial street. Defendant denies that there is one parking lane in each direction for its entire length.") (emphasis added). The photograph of Anderson Boulevard submitted in support of Ericson's Additional Statement of Material Facts further supports this fact. *See* (Dkt. 28) at 22. Thus, an officer in Stolfe's position could readily and reasonably think that Anderson Boulevard met the conditions of a "roadway[] having width for not more than one line of *traffic* in each direction." 625 ILCS 5/11-702 (emphasis added).

These road conditions coupled with the evidence that Officer Stolfe observed Ericson's school-bus-passing behavior, wherein he maneuvered around the bus by completely entering the lane of oncoming traffic to his left and then re-entered the lane of southbound traffic are enough for Officer Stolfe to have reasonably believed that Ericson violated Section 11-702, and therefore they are enough to support reasonable suspicion (and also probable cause) for the traffic stop. *See Whren*, 517 U.S. at 810 (the decision to stop an automobile is reasonable when the police have probable cause to believe that a traffic violation has occurred); *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000) ("[S]o long as the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense, the officer has probable cause to stop the driver."); *United States v. Garcia–Garcia*, 633 F.3d 608, 612 (7th Cir. 2011) ("When a police officer reasonably believes that a driver has committed a minor traffic offense, probable cause supports the stop.") (citations omitted).

That is, Officer Stolfe at minimum had reasonable suspicion to believe that Ericson's behavior had violated Section 11-702. *See Bentley*, 795 F.3d at 634 (finding probable cause to support traffic stop where testimonial and video evidence showed the defendant's car crossing traffic lines); *Cashman*, 216 F.3d at 587 (officer had probable cause to stop vehicle after observing substantial crack in the vehicle's windshield, regardless of whether the precise length or position of the crack constituted an actual commission of a traffic offense by driving a vehicle with an excessively cracked windshield under Wisconsin law); *Kraman v. Hoskinson*, 2018 WL 1252109, at *4 (N.D. Ill. Mar. 12, 2018) (police officer had reasonable suspicion to make a traffic stop, based on his observation of a device affixed to Kraman's rear license plate that obscured the plate); *see also United States v. Dowthard*, 500 F.3d 567, 569 (7th Cir. 2007) ("[T]he only argument available to Dowthard is the factual question whether it was reasonable for Officer Kennedy to believe that

she actually observed him driving without wearing a seatbelt."). Even if Officer Stolfe was mistaken in his understanding of Section 11-702, based on the facts in the record, any such misunderstanding was reasonable. *See Heien v. North Carolina*, 135 S. Ct. 530, 539 (2014) ("The Fourth Amendment tolerates only reasonable mistakes, and those mistakes—whether of fact or of law—must be objectively reasonable.").

As a final point on Ericson's overall dispute as to whether he actually violated Section 11-702, Ericson's asserts that there was more than "the required 200 feet interview" between his own vehicle and the nearest oncoming vehicle as he re-entered the southbound lane ((Dkt. 28) at ¶ 19), which Defendants do not dispute. But this fact does not change the result because Section 11-702 does not contain any such 200-foot requirement for passing on a two-lane road and Ericson does not point to the source of any such requirement. For this reason, Ericson's distance from oncoming traffic does not factor into the analysis as to whether Officer Stolfe reasonably believed that Ericson had violated the improper passing statute. All in all, Officer Stolfe's reasonable belief that Ericson committed a traffic violation alone establishes reasonable suspicion—and even probable cause—for the stop, and thus bars Ericson's unlawful seizure claim. *See Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010) ("If probable cause to arrest is found to exist, it 'is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest.'") (quoting *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006)).

Second, Ericson attacks Officer's Stolfe's basis for the stop by arguing that he failed to articulate the basis for which he stopped Ericson. (Dkt. 27) at 2. More to the point, Ericson acknowledges that Officer Stolfe told him first that he had passed through a school zone and next issued him a Warning Notice listing a violation of Section 11-702. But Ericson argues that these were not "articulable" bases because these reasons were, in Ericson's opinion, irrelevant or

12

inapplicable. *Id.* However, Ericson's disagreement with the violations identified by Officer Stolfe does not give rise to an inference that Officer Stolfe lacked "specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant[ed]" the stop, particularly in light of the discussion above. *See Terry*, 392 U.S. at 21; *see also Delaware v. Prouse*, 440 U.S. 648, 663 (1979) (a police officer may stop a vehicle when the officer has "at least *articulable* and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law").

More importantly, an arresting officer's state of mind is irrelevant to the existence of probable cause. *Devenpeck v. Alford*, 125 S.Ct. 588, 594 (2004). The officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause. As we have repeatedly explained, " the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's actions does not invalidate the action taken as long as the circumstances, viewed objectively, justify the action.'" *Id.; Whren*, supra, at 813. As already discussed, the record reveals that Officer Stolfe possessed articulable facts that would indicate Ericson committed a traffic violation. *See, e.g.*, (Dkt. 23-1) (B. Stolfe Aff.) at ¶ 3. Further, the fact that Officer Stolfe gave Ericson more than one basis for pulling him over is irrelevant to the probable cause determination. *Jackson*, 627 F.3d at 638. ("[T]he Fourth Amendment's focus on reasonableness dictates an objective analysis.") As such, it is irrelevant that Ericson was not charged with or cited for a school-zone infraction but instead was issued a Warning Notice for violation of Section 11-702. The traffic stop was reasonable under the Fourth Amendment because there was reasonable suspicion to believe that *some* traffic violation had been committed, "even if it is not the crime with which the officers

initially charge the suspect." *Id.* at 638–39; *see also Abbott*, 705 F.3d at 715 ("There is some dispute as to precisely what Deputy Sweeney told Travis he was being arrested for, but this is immaterial because an arrest can be supported by probable cause that the arrestee committed any crime, regardless of the officer's belief as to which crime was at issue."). Thus, Officer Stolfe's first statement that Ericson had passed in a school zone is irrelevant as to whether, viewing the situation objectively, reasonable suspicion existed at the time of the stop. This same reasoning applies the dispute as to whether Officer Stolfe knew what the requirements of Section 11-702 were: a reasonable officer would have had sufficient facts to justify a reasonable suspicion that Ericson was violating Illinois's traffic law on passing vehicles proceeding in opposite directions. All in all, given the undisputed portions of the record, Ericson fails to undermine the legality of the traffic stop.

2. **Qualified Immunity**

Even if these circumstances fell short of reasonable suspicion (which they do not), Ericson fails to overcome Officer Stolfe's qualified immunity defense. The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The protection of qualified immunity, therefore, applies even if an officer makes a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Id.*

Whether a defendant is entitled to qualified immunity requires a two-step analysis. If the court answers either inquiry negatively, "the defendant official is entitled to summary judgment." *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017). First, the court must determine, considering the facts in the light most favorable to the plaintiff, whether defendant's conduct violated a

constitutional right. *Payne v. Pauley*, 337 F.3d 767, 775 (7th Cir. 2003). Second, the court must determine whether the right that the defendant violated was clearly established at the time of the alleged injury and was one of which a reasonable person would have known. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). The second step must be undertaken in light of the specific context of the case, not as a general proposition. *See id.* (reminding lower courts not to define clearly established law at a high level of generality). A case is not required to be directly on point for a right to be clearly established, but existing precedent must have placed the statutory or constitutional question beyond debate. *Id.* (citation omitted). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam)). These two steps may be flexibly applied and do not need to be applied in a rigid order. *Pearson*, 555 U.S. at 242. Although the privilege of qualified immunity is a defense, the plaintiff carries the burden of defeating it. *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 968 (7th Cir. 2003).

Thus, to demonstrate that a right was "clearly established" at the time of the alleged violation, Ericson must identify "existing precedent" placing "the statutory or constitutional question beyond debate," *Green*, 868 F.3d at 633 (internal quotation marks omitted), or present the "rare obvious case" where a body of relevant precedent is unnecessary, *see District of Columbia v. Wesby*, 138 S. Ct. 577, 590–91 (2018). Ericson does neither here. The issue of whether his conduct fell within the letter of the relevant traffic law does not present a "rare obvious case," so Ericson must identify precedent defining the allegedly violated right in an manner "particularized to the facts of the case." *Green*, 868 F.3d at 633. Such specificity becomes "especially important in the Fourth Amendment context," where the Supreme Court has recognized that an officer might struggle to determine how the "relevant legal doctrine" will apply

15

to the "factual situation the officer confronts." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *see also Kisela*, 138 S. Ct. at 1152–53. But Ericson has not pointed to any such existing precedent. In fact, he completely failed to respond to Defendants' qualified immunity argument. Further, he only included citations to two cases in his entire Response brief—to *Terry v. Ohio*, 392 U.S. 1 (1968) and *Delaware v. Prouse*, 440 U.S. 648 (1979)—and neither case serves to support the argument that Officer Stolfe violated clearly established law. Instead, they support Officer Stolfe's actions in this case, where he only seized Ericson in the Fourth Amendment sense after obtaining reasonable suspicion that that Ericson violated a traffic law. *See Prouse*, 440 U.S. at 663. Viewing Ericson's argument to be that he did not violate any law and therefore he should not have been stopped, *see* (Dkt. 27), this argument is far too general to overcome a qualified immunity defense and it does not properly address the specific circumstances of this case. And again, the law is clear that an officer's reasonable belief that a law has been broken—even a minor traffic law—is enough to justify a traffic stop. *See, e.g.*, *Garcia-Garcia*, 633 F.3d at 612. Accordingly, Ericson failed to show that Officer Stolfe violated clearly established law by conducting the traffic stop, *Molina*, 325 F.3d at 968, and the Court grants Defendants' motion for summary judgment on Count I.

## B. Illegal Search (Count II)

Ericson also argues that Officer Stolfe violated his Fourth Amendment rights by conducting a search of "plaintiff and his records" without a warrant and without probable cause to believe that plaintiff had committed, was committing or was about to commit an offense." (Dkt. 1) at ¶ 23. On the record before the Court, it is undisputed Officer Stolfe requested Ericson's driver's license and proof of insurance but he did not pat Ericson down, ask Ericson to open his trunk, or ask Ericson to open any of his car doors. (Dkt. 23) at ¶¶ 12, 14–15. On these facts, Defendants argue that Officer Stolfe's actions were justified on the basis of the traffic stop. (Dkt. 22) at 6. Ericson, for his part, does not respond to Defendants' arguments on his illegal-search claim at all in his Response brief. *See generally* (Dkt. 27). Therefore, Ericson has abandoned his illegal-search claim by failing to adequately develop arguments relating to it. *See Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) (holding that the plaintiffs had waived claims where they did not respond to defendant's arguments and "did not provide the district court with any basis to decide" them); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *Cent. States, Se. and Sw. Areas Pension Fund v. Midwest Motors Express*, 181 F.3d 799, 808 (7th Cir. 1999) ("A party's failure to meaningfully respond to a motion for summary judgment . . . constitutes waiver."); *see also Huang v. Continental Cas. Co.*, 2012 WL 104628, at *6 (N.D. Ill. Jan. 12, 2012) ("A party abandons a claim by failing to address it in his response brief to a motion for summary judgment.") (citing *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005); *Palmer v. Marion Cty.*, 327 F.3d 588, 597 (7th Cir. 2003)).

Even if this claim were not abandoned, it would still fail because there is no evidence from which a jury could conclude that Officer Stolfe conducted a search in violation of Ericson's Fourth Amendment rights. "A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015). "Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.'" *Id.* (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)). "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* (citing *Prouse*, 440 U.S. at 658–660)). The record in this case reflects that only these "ordinary inquiries" were performed by Officer Stolfe. "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id.* (citation omitted). Accordingly, Officer Stolfe's "search" was within bounds of rationale supporting the traffic stop—a suspected violation of Section 11-702. No jury could conclude that the "search" violated Ericson's Fourth Amendment rights.

C.     *Respondeat Superior* **(Count III) and Indemnification (Count IV)**

Finally, Defendants seek summary judgment on Ericson's claims against Geneva for *respondeat superior* and indemnification. *See* (Dkt. 22) at 8–9. As with Count II, Ericson fails to make any argument in opposition to Defendants' motion for summary judgment on these counts. So again, the Court considers these claims abandoned. *Goodpaster*, 736 F.3d at 1075.

Even if not abandoned, both claims would fail. First, Ericson's *respondeat-superior* claim alleges that Geneva is "liable as principal for torts committed by its agents." (Dkt. 1) at ¶ 27. But Ericson has neither alleged or argued that Officer Stolfe committed any tort. To the extent that he seeks to hold Geneva liable for Officer Stolfe's alleged violations of his Fourth Amendment rights,

this claim fails for numerous reasons, namely that the Court has already determined that Defendants are entitled to summary judgment on Ericson's Fourth Amendment claims. Even if they were not, "municipal governments cannot be held liable for damages under 42 U.S.C. § 1983 on a theory of *respondeat superior* for constitutional violations committed by their employees." *Simpson v. Brown Cty.*, 860 F.3d 1001, 1005–06 (7th Cir. 2017). Although municipal governments can, however, be held liable for unconstitutional municipal policies or customs under *Monell v. Dep't of Social Services*, 436 U.S. 658, 690–91 (1978), Ericson has neither alleged that Geneva maintains any unconstitutional policies or customs nor has he offered any evidence whatsoever to create a factual dispute over any unconstitutional polices or customs. For these reasons, Defendants are entitled to summary judgment on Count III.

Finally, as to Count IV, "[i]ndemnification is applicable if the Defendant Officer[], while acting within the scope of [his] employment, [is] liable for any" of the Section 1983 claims asserted. *Ivy v. Powers*, 2009 WL 230542, at *2–3 (N.D. Ill. Jan. 30, 2009); *see also* 745 ILCS 10/9-102 ("A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable[.]"). Because Ericson does not have any viable § 1983 claims against Officer Stolfe based on actions within the scope of his employment, the Court grants summary judgment as to Count IV.

## **CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment is granted. (Dkt. 21). Final judgment will be entered in favor of Defendants and against Ericson.

Date: September 12, 2018

_____
Hon. Virginia M. Kendall
United States District Judge